UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **TROY P BENOIT** | **CASE NO. 6:22-CV-05288** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **FOREST MOTEL INC ET AL** | **MAGISTRATE JUDGE DAVID J. AYO** |

## REPORT AND RECOMMENDATION

Before this Court is a MOTION TO DISMISS filed by defendants Forest Motel, Inc., Albert P. Kuhlman, and Marc Kuhlman ("Defendants"). (Rec. Doc. 13). Plaintiff opposes the motion. (Rec. Doc. 19). The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636. Considering the evidence, the law, and the parties' arguments and for the reasons explained below, the Court recommends that Defendants' instant motion be DENIED.

### Factual Background

Plaintiff Troy P. Benoit ("Benoit") is a paraplegic Louisiana citizen who evacuated his home following Hurricane Ida in August of 2021. (Complaint, Rec. Doc. 1 at ¶¶ 1, 11, 19). While awaiting modifications to the home of a relative to accommodate Benoit on a more permanent basis, Benoit sought temporary lodging through the Federal Emergency Management Agency ("FEMA"), which paid for and coordinated a room for Benoit at the Forest Motel in Franklin, Louisiana. (*Id.* at ¶¶ 21, 22). Benoit alleges he was advised that he was being assigned a wheelchair accessible room, a fact which he felt was confirmed by a sign outside his room designating it as an accessible room. (*Id.* at ¶¶ 24 - 29). Benoit alleges the room was not "accessible" because the room's bed was "approximately 30 inches or higher off the ground." (*Id.* at ¶¶ 30 – 31). Benoit claims the height of the bed, approximately 10 inches higher than the seat of his wheelchair, created an unreasonably dangerous condition

causing him injury as he attempted to transfer from his wheelchair to the bed. (*Id.* at ¶¶ 32 – 66). Specifically, Benoit alleges he fell during transfer and broke his leg. (*Id.* at ¶ 62). He claims he reported the injury to staff at the Forest Motel, but the staff were not responsive and eventually made him feel unwelcome by discontinuing housekeeping services and tampering with keycards issued to him. (*Id.* at ¶¶ 75 – 83).

Benoit filed suit against Forest Motel, Inc., Albert P. Kuhlman, and Marc Kuhlman, who are alleged to be owners of the Forest Motel. (Complaint at ¶¶ 13 – 15). Benoit asserts claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*; Louisiana's Human Rights Act ("LHRA"), La. R.S. § 52:2264; and Louisiana negligence law, La. Civ. C. Arts. 2315, 2317. (*Id.*, generally). In response, Defendants filed the instant motion pursuant to Federal Rule of Civil Procedure 12(b)(6). (Rec. Doc. 13). Defendants' motion is fully briefed and ripe for consideration.

## **Applicable Standard**

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins*, 224 F.3d at 498. Courts "are not bound to accept as true a

2

legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atl.*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl.*, 127 U.S. at 556). *See also In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir. 2008)

3

## Analysis

### *Title III of the ADA*

The ADA functions as "a broad mandate of comprehensive character and sweeping purpose intended to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life." *Bailey v. Board of Comm'rs. of La. Stadium & Exposition Dist.*, 484 F. Supp. 3d 346, 363 n. 115 (E.D. La. 9/4/2020) (quoting *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (en banc) (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) (internal quotation marks omitted)). Types of discrimination are addressed in distinct "titles," with Title I regarding employment discrimination, Title II regarding discrimination in public services, and Title III regarding discrimination in public accommodations. (*Id.*, citing *PGA Tour*, 532 U.S. at 675). "Public accommodations" are defined as, *inter alia*, "an inn, hotel, motel, or other place of lodging[.]" 42 U.S.C. § 12181(7)(A).

Title III of the ADA provides,

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, service, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

Thus, to state a Title III ADA claim, a plaintiff must allege: "(1) discrimination on the basis of disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator." *Mullen v. Concord Hosp. Enters. Co., LLC*, 2022 WL 295880 *3 (W.D. Pa. 2/1/2022) (quoting *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 542 – 43 (W.D. Pa. 2013).

Title III's implementation regulations ("ADAAG") specify "the technical structural requirements of public accommodations applicable to design, construction and alteration of certain elements of public accommodations." *Eyler v. Liza Luv Investors III, LLC*, 2022 WL 2829823 *4 (W.D. Penn. 7/20/2022). Section 806.2.3 regards "Sleeping Areas" and provides certain requirements for hotel rooms but does not address the specific issue of bed height. 36 C.F.R. Pt. 1191, App. D, § 806.2.3. Guidance issued in Appendix A to Title III's implementation regulations affirms the purposeful omission of bed height requirements, noting that

> many commenters urged the Department to regulate the height of beds in accessible hotel guest rooms…in recent years, hotel beds have become higher as hotels use thicker mattresses, thereby making it difficult or impossible for many individuals who use wheelchairs to transfer onto hotel beds…The Department intends to provide specific guidance relating to…hotel beds…in a future rulemaking. **For the present, the Department reminds covered entities that they have the obligation to undertake reasonable modifications to their current policies and procedures and to undertake barrier removal or provide alternatives to barrier removal to make their facilities accessible to persons with disabilities. In many cases…adjusting hotel bed heights may be necessary to comply with those requirements.**

28 C.F.R. pt. 36, Appx. A at 884 (2020).

The parties agree that bed height is not specifically regulated anywhere in the ADA but disagree on what that lack of specific regulation means for Benoit's claims. Defendants argue Benoit fails to state a claim for which relief may be granted in this case because (1) the ADAAG is silent on the issue of bed height in motels, and (2) a bed is part of the motel's "inventory," and a public accommodation is not required to alter its inventory to include accessible goods. (Rec. Docs. 13, 20). Benoit cites cases concluding that a plaintiff may state a cognizable claim for Title III discrimination under the ADA's general discrimination

5

prohibition even when a plaintiff is unable to identify a specific ADAAG violation. (Rec. Doc. 19).

Considering the guidance cited above from Appendix A to 28 C.F.R. pt. 36, this Court concludes that Benoit's allegation that the bed provided by Defendants in the accessible room to which he was assigned does state a cognizable claim under Title III of the ADA. As noted in Appendix A, adjustment of bed heights may be necessary to comply with overarching obligations under the ADA to "undertake reasonable modifications to their current policies and procedures and to undertake barrier removal or provide alternatives to barrier removal." 28 C.F.R. pt. 36, Appx. A at 884 (2020).

A slate of recent decisions by the Western District of Pennsylvania adheres to the guidance offered by the Department of Justice above. In *Mullen v. Concord Hosp. Enters. Co., LLC*, 2022 WL 295880 (W.D. Penn. 2/1/2022), the court considered a motion to dismiss Mullen's Title III ADA claim alleging that increasing bed heights in Concord's accessible rooms rendered those rooms inaccessible to him because of his use of a wheelchair. In *Mullen*, as here, the defendant argued that failure to identify a violation of a specific ADAAG regulation warranted dismissal of plaintiff's Title III ADA claim. *Id.* at *3 – 4. The district court rejected that argument, applying the premise that

> [Defendant's]…policy and practice of offering only inaccessible and unusable beds in…purportedly accessible rooms has barred Plaintiff and similarly situated individuals with disabilities from being able to enjoy one of the most basic services or accommodations offered by a hotel room operator, a bed on upon which an individual can sleep.

*Mullen*, supra, at *10. *See also*, *Eyler*, *supra*; *Migyanko v. Aimbridge Hosp., LLC*, 2022 WL 345058 (W.D. Penn. 2/4/2022).

What remains is Defendants' novel argument regarding the classification of beds as part of a motel's "inventory" which is not required to be revised to suit individuals with

6

disabilities.  Defendants cite 28 C.F.R. § 36.307(a) which provides that "[t]his part does not require a public accommodation to alter its inventory to include accessible goods that are designed for, or facilitate use by, individuals with disabilities."

If this Court were to accept Defendants' theory that the beds at issue in this case are properly considered part of Forest Motel's "inventory" under the ADA, dismissal would still be inappropriate since public accommodations "'are required to make reasonable, temporary adjustments to goods already in stock[.]'" *Karczewski v. DCH Mission Valley, LLC*, 862 F.3d 1006, 1014 - 15 (9th Cir. 2017) (quoting *Funches v. Barra*, 2016 WL 2939165 * 6 (S.D.N.Y. 5/17/2016)).  Defendants make no showing that Benoit's claim under Title III of the ADA seeks an adjustment to "goods" that would be "unreasonable" as a matter of law.  This Court also notes Defendants cite no cases in which a hotel's bed is considered "inventory" under the ADA, nor could the Court find such authority.

As acknowledged by Defendants, "inventory" is not defined by the ADA.  Where a statute fails to define a term, "words will be interpreted as taking their ordinary, contemporary, common meaning." *Dominguez v. Banana Republic, LLC*, 613 F. Supp. 3d 759, 768 (S.D. NY 4/23/2020) (quoting *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014)). "Inventory" is defined, in part, as "an itemized list of current assets…a list of goods on hand…a catalog of the property of an individual or estate…the quantity of goods or materials on hand[.]"[1]  The term "goods," referred to in 28 C.F.R. § 36.307(a) as a component of "inventory," is similarly undefined by the ADA.  "Although the ADA does not define 'goods,' the Supreme Court recently considered the definition of 'goods' under the Lanham Act—which also does not define the term—and concluded the most natural reading of that term

---

[1] https://www.merriam-webster.com/dictionary/inventory.

7

was '[w]ares; merchandise.'" *Thorne v. Boston Market Corp.*, 469 F. Supp. 3d 130, 142 (S.D.N.Y. 6/29/2020) (quoting *Dastar Corp. v. Twentieth Cent. Fox Film Corp.*, 539 U.S. 23, 31 (2003) (quoting Webster's New Int'l. Dictionary)).

Taken together, this Court believes 28 C.F.R. § 36.307(a) should not be read to include a hotel bed in the definition of "goods" or "inventory." Case law seems to support this view, applying § 36.307(a) to wares or merchandise for sale by retail establishments. *McNeil v. Time Ins. Co.*, 205 F.3d 179 (5th Cir. 2000) (insurance company not required to sell policies covering AIDS-related claims); *Thorne v. Boston Market Corp.*, 469 F. Supp. 3d 130, (S.D.N.Y. 6/29/2020) (dismissing plaintiff's claim under Title III of the ADA based on restaurant's failure to sell gift cards accessible to vision impaired customers); *Devarez v. Sumavision SFO LLC*, 2018 WL 827969 (N.D. Ca. 2/12/2018) (denying dismissal of Title III claim based on golf course's failure to provide adaptive golf carts; preserving for further proceedings regarding status of an adaptive golf cart under the ADA). *Anderson v. Macy's*, 943 F. Supp. 2d 531 (W.D. Pa. 5/2/2013) (department store not required to sell plus-sized clothing); Defendants offer no argument in support of their retail status or the view that the booking of a hotel room by a guest constitutes a sale of the bed. This Court offers no opinion on the ultimate success of Benoit's Title III claim but finds such claim sufficiently stated under the foregoing authority. For this reason, this Court will recommend that Defendants' motion be denied as to Benoit's Title III ADA claim.

### *Louisiana Human Rights Act*

Defendants seek dismissal of Benoit's claims under the Louisiana Human Rights Act, La. Rev. Stat. Ann. § 51:2231, *et seq.*, ("LHRA") for the same reasons advanced concerning Benoit's Title III ADA claim. (Rec. Doc. 13-1 at p. 11). As argued by Benoit, analysis of claims under the LHRA mirrors that of claims under the ADA. *Smith v. France*, 850 Fed. Appx. 243 (5th Cir. 2021); *Conine ex rel. Estate of Addie v. Universal Oil Prods. Co.*, 966 So. 2d 763 (La. App. 2 Cir. 9/26/2007) (internal citations omitted). Considering the foregoing analysis under Title III of the ADA, this Court will also recommend that Defendants' motion be denied as to Benoit's LHRA claims.

### *Negligence*

Defendants' motion further seeks dismissal of Benoit's claims under Louisiana's general negligence law. La. Civ. C. Arts. 2315, 2317, 2317.1. (Rec. Doc. 13-1 at pp. 15 – 18). Defendants argue that, to the extent the bed was unreasonably high, it constituted an open and obvious hazard, which Benoit admits he observed upon entering the room for the first time. Defendants claim they had no duty to warm Benoit of an open and obvious hazard, warranting dismissal of his negligence claims. (*Id.*). Benoit asserts innkeepers have a heightened duty of care toward their guests, which was breached by Defendants' failure to provide a safe environment, particularly in a room billed as "accessible." (Rec. Doc. 19 at pp. 21 – 23).

Louisiana Civil Code Articles 2315, the origin of Louisiana's tort law, provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Articles 2317 instructs that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by…things we have in our custody" and forms the basis for custodial liability within the broader tort law. Article 2317.1

9

qualifies Article 2317, encapsulating the necessary elements of a custodial liability claim.[2] To state a claim for custodial liability, a plaintiff must allege facts demonstrating: (1) the object was in the defendant's custody; (2) the object contained a vice or defect which presented an unreasonable risk of harm to others; (3) the defective condition caused damage to plaintiff; and (4) the defendant knew or should have known of the defect. *Luna v. PNK Lake Charles, LLC*, 725 Fed. Appx. 297 (5th Cir. 2018) (quoting *Cormier v. Dolgencorp, Inc.*, 136 Fed. Appx. 627, 627 – 28 (5th Cir. 2005) (citing La. Civ. Code Arts. 2315, 2317, 2317.1) (internal quotations omitted). "[T]he question of whether a custodian or owner of a thing has constructive knowledge of a defect in that thing is inextricably linked with the exercise of reasonable care." *Id.* at 299 (quoting *Dawson v. Rocktenn Servs., Inc.*, 674 Fed. Appx. 335, 340 (5th Cir. 2016) (citing *Walters v. City of West Monroe*, 162 So. 3d 419, 424 (La. App. 2 Cir. 2015)).

Benoit correctly argues that Louisiana law imposes upon innkeepers a heightened duty of care toward their guests.

> An innkeeper does not insure his guests against the risk of injury or property loss resulting from violent crime. The innkeeper's position vis-à-vis his guests is similar to that of a common carrier toward its passenger. Thus, a guest in entitled to a high degree of care and protection.

*Newman v. Clarion Hotel @ Los Angeles Int'l Airport*, Civ. Act. No. 06-CV-0855, 2008 WL 2436866 * 3 – 4 (W.D. La. 4/30/2008) (quoting *Kraaz v. La Quinta Motor Inns, Inc.*, 410 So. 2d 1048 (La. 1982), *Banks v. Hyatt Corp.*, 772 F.2d 214, 220 (5th Cir. 1984).

---

[2] La. Civ. C. Art. 2317.1 provides:

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

10

Benoit's complaint alleges a duty owed by Defendants, custody of the accessible room and its bed by Defendants, a defect in the bed's height in light of its intended use in an accessible room, damage in the form of a broken leg caused by the bed at issue, and that Defendants knew or should have known of the existence of the defective condition of the bed. (Rec. Doc. 1 at ¶¶ 130 – 37).  Benoit's complaint successfully alleges the elements of a custodial liability claim.

Defendants argue that Benoit's own admission, found in the Complaint, that he "noticed his bed was unreasonably high for a paralyzed person in a wheelchair" upon checking into his room defeats his custodial liability claim because the hazard was open and obvious.  (Rec. Doc. 13-1 at pp. 11 – 13).  Defendants further argue that "[i]f the 'risk of harm is so obvious, universally known and easily avoidable, the risk is not unreasonable.'" (*Id.* at p. 12, quoting *Durmon v. Billings*, 873 So. 2d 872, 876 (La. App. 2 Cir. 5/12/2014)).

Benoit alleges he was directed to lodging at the Forest Motel by FEMA following Hurricane Ida and told, upon arrival, that a single accessible room remained available.  (Rec. Doc. 1 at ¶22, 24).  Given these allegations, as well as those that Benoit reported his injury to Defendants and asked for but was not granted "either another accessible room with a lower bed, a new bed, or anything else that could be done to made [sic] the…room accessible for [Benoit]," a question exists regarding whether the risk of harm in this case was "universally known" or "easily avoidable," making dismissal inappropriate at this time. (*Id.* at ¶¶ 78 – 81). *Broussard v. State ex rel. Office of State Bldgs.*, 113 So. 3d 175, 185 (La. 2013) (analysis of whether a condition is unreasonably dangerous is tied to the issue of breach and is fact-intensive and, therefore, properly reserved for the fact-finder) (internal citations omitted).

Considering the foregoing analysis, this Court will recommend that Defendants' motion be denied as to Benoit's claims under La. Civ. C. Arts. 2315, 2317, and 2317.1.

## Conclusion

For the reasons discussed herein, the Court recommends that Defendants' MOTION TO DISMISS (Rec. Doc. 13) be DENIED in all respects, preserving Benoit's claims for further proceedings.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

**THUS DONE** in Chambers, Lafayette, Louisiana on this 26th day of September, 2023.

_____
**DAVID J. AYO**
**UNITED STATES MAGISTRATE JUDGE**